UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE:<br>MELISSA BEECHER BONEBO | Chapter 7 |
| Debtor | Case No. 05-21450 |
| LAW OFFICES OF DONNA BUTTLER | Adversary Proceeding |
| Plaintiff | No. 05-2074 |
| v. | |
| MELISSA BEECHER BONEBO | |
| Defendant | |

**APPEARANCES:**

Gary J. Greene, Esq.
Gary Joseph Greene P.C., P.O. Box 408, 30 Avon Meadow Lane, Avon, CT 06001
Counsel for Plaintiff

William J. Forbes, Esq.
Law Offices of William Forbes, P.O. Box 1868, 17 Lenox Place, New Britain, CT 06050
Counsel for Defendant - Debtor

## MEMORANDUM OF DECISION

KRECHEVSKY, U.S.B.J.

I.

The Law Offices of Donna Buttler ("the plaintiff"), on August 5, 2005, filed a complaint against Melissa Beecher Bonebo ("the debtor"), the debtor in a Chapter 7 bankruptcy case, seeking to have the plaintiff's claim held nondischargeable under Bankruptcy Code §523(a)(2)(A) as a debt for services and/or an extension of credit

obtained by fraud.[1] In her answer, the debtor admitted the existence of the debt but denied any fraudulent intent; the debtor alleged duress and partial payment as special defenses; and asserted a counterclaim against the plaintiff for the debtor's attorney's fees, pursuant to §523(d) (debtor entitled to reasonable attorney's fees if position of creditor "not substantially justified"). The court held a hearing on April 6, 2006, at which it received testimonial and documentary evidence from both the plaintiff and the debtor. Following the hearing, the parties submitted briefs in support of their respective positions.

## II.

## BACKGROUND

The debtor, on October 15, 2001, retained the plaintiff to represent her in her marital dissolution proceedings in state court. The plaintiff requested and received a $3,000 retainer from the debtor. The parties signed an engagement agreement, under which the debtor agreed to pay the plaintiff on the basis of hours worked at the rate of $175 per hour. The dissolution proceedings, involving disputed issues of custody and child support, proved to be extremely acrimonious, and the plaintiff's fees eventually exceeded $40,000.

The debtor, in April 2002, signed a modification of the engagement agreement prepared by the plaintiff, under which the debtor agreed to make payments of "$800.00 per month towards the arrearage on the bill," which, at that time was approximately $4,500; in addition the debtor agreed to pay the plaintiff the amount of the debtor's

---

[1] A second count of the complaint alleging nondischargeabilty under §523(a)(2)(B)(debt due to false financial statements) was withdrawn by the plaintiff on February 11, 2006.

2

expected tax refund when received. (Exh. 2.) The debtor, a hospital social worker, testified that, in order to make the payments to the plaintiff, she was working two jobs throughout 2003 and 2004, earning about $45,000 per year, despite a medical condition, spina bifida, that made it painful to sit or stand for extended periods of time. The plaintiff testified that "for the most part [the debtor] kept up with the $800" payments. (Tr. at 13.) Nevertheless, on March 5, 2003, one day before the dissolution trial, the plaintiff presented the debtor with promissory note for the then outstanding balance of $16,073.55, and a second modification of the retainer agreement. The note provides that the outstanding balance is payable in full 90 days after final dissolution of marriage. The modification agreement states that the plaintiff would continue to accept payments of $800 per month until the earlier of 120 days after dissolution or such time as debtor can access funds held in her pension plan or those held pursuant to a qualified domestic relations order ("QDRO"), making her a beneficiary in her ex-husband's pension plan. It further states that "Melissa Bonebo will sufficiently liquidate [such funds] to pay in full all attorney's fees and expenses due as of the date of liquidation." (Exh. 3.) The plaintiff represented the debtor at the two-day dissolution trial on March 6 and 7, 2003. Following the trial, the plaintiff sent the debtor a new engagement agreement with an increased hourly rate, and the debtor terminated her services.

The debtor continued to make payments of $800 per month until May 2004. She has not yet had a QDRO prepared for submission to her former husband's pension plan administrator. The debtor testified that she was unable to make further payments because she was not receiving the court-ordered child support from her ex-husband;

and was unable to continue working due to a worsening of her medical condition. The debtor had refinanced her residence in August 2003, but lacked sufficient equity to be able to borrow more than the outstanding balance.

The debtor filed a Chapter 7 bankruptcy petition on May 3, 2005. In the schedules filed with her petition, the debtor included her home and her pension plan as assets and claimed exemptions therefor. She lists total unsecured claims of $96,632. The debtor testified that she did not list any interest in her ex-husband's pension plan as an asset because she did not yet have the QDRO. The trustee, on June 15, 2005, filed a report of no distribution stating that "there is no property available for distribution from the estate over and above that exempted by law." The debtor received a discharge on August 23, 2005.

The plaintiff claims an outstanding balance, including interest and late charges, as of the petition date of $27,375.24. Payments made by the debtor prepetition totaled $24,605.20, of which $14,005.20 was paid prior to March 5, 2003, and $10,600.00 was paid after the note and modification were signed on March 5, 2003.

### III.

### ARGUMENTS OF THE PARTIES

The gist of the complaint is that:

> On March 5, 2003 the Defendant, in order to induce the plaintiff to continue to represent the defendant in the pending dissolution action, signed a promissory note and a modification of the initial retainer agreement.
> . . .
> Defendant obtained the legal services of the plaintiff and had no intention of paying in accordance with the aforementioned agreements and only agreed to the aforementioned agreements in order to get the plaintiff to continue to represent the defendant.

4

(Complaint ¶¶ 6,9.)

The debtor argues that the plaintiff's allegations are untrue; that she intended to pay the plaintiff and that the evidence supports her contention that she made every effort to do so. She argues that the plaintiff has not met her burden of proof on the elements of her claim. The debtor counterclaims that the plaintiff's allegations are "not substantially justified" and that the debtor is entitled, under §523(d), to an award of costs and attorney's fees incurred for her defense.

## IV.

## DISCUSSION

### A.

### Dischargeability - §523(a)(2)(A)

> Under § 523(a)(2)(A), a debt may be determined nondischargeable based on fraud where the creditor proves that: (1)the debtor made the representations; (2) at the time he knew they were false; (3) he made them with the intention and purpose of deceiving the creditor; (4) the creditor relied on such representations; (5) the creditor sustained the alleged loss and damage as the proximate result of the representation having been made. The level of reliance is justifiable reliance. The burden of proof on the creditor is to prove each element of the statute by a preponderance of the evidence. Further, exceptions to dischargeability are narrowly construed, an approach that implements the fresh start policy of the Bankruptcy Code. To be actionable, the debtor's conduct must involve moral turpitude or intentional wrong; mere negligence, poor business judgment or fraud implied in law (which may exist without imputation of bad faith or immorality) is insufficient.

AT&T Universal Card Services Corp. v. Williams (In re Williams), 214 B.R. 433, 435 (Bankr. D. Conn. 1997) (Internal quotation marks and citations omitted).

The plaintiff contends that the debtor, by signing the March 5, 2003 note and modification, knowingly misrepresented that she intended to pay the plaintiff. The plaintiff, in her brief, repeats at least three times that the debtor's actions subsequent

5

to March 5, 2003 "show that she never intended to pay the bill." (Pl. Br. at 3,7.) The actions cited by the plaintiff are that the debtor, following her divorce, refinanced her house; has not yet executed the QDRO; and eventually ceased making payments to the plaintiff. The debtor testified that, in refinancing her house, she was able to obtain financing only for the outstanding balance of the previous mortgage and that her request for an additional line of credit was declined. The evidence showed that, in addition to the $14,005.20 paid prior to March 5, 2003, the debtor continued to make payments, totaling another $10,600.00, over the next fifteen months. She testified that to do so, she had worked two jobs despite her worsening medical condition[2], and had received loans and gifts from family members. The debtor testified that she has not pursued preparation of the QDRO because ongoing post-dissolution legal matters concerning child support and her children's welfare have been more pressing.

The plaintiff has failed to provide any evidence from which the court could infer that she relied on the debtor's signing of the March 5, 2003 note or of any loss proximately caused thereby. The plaintiff testified at trial that she would not, and, in all likelihood could not, have withdrawn from representing the debtor one day prior to her dissolution trial. (Tr. at 37-42.) Nor has the plaintiff cited any other services she provided or losses she incurred as a result of the March 5, 2003 documents. Shortly after the dissolution trial, the plaintiff increased her hourly fees and the debtor sought counsel elsewhere in regard to her post-dissolution matters. The court concludes that the plaintiff has not met her burden of proof of either justifiable reliance or loss (the

---

[2]  The debtor is presently on disability leave from her primary employer and is able to work via telephone at her second job.

6

fourth and fifth elements of a §522(a)(2)(A) action).

The plaintiff has also failed to meet her burden of proof as to the debtor's allegedly fraudulent intent. "Intent to deceive is an issue of fact to be determined based on the totality of the circumstances." McCarthy v. Radcliffe (In re Radcliffe), 317 B.R. 581, 588 (Bankr. D.Conn. 2004). The court is satisfied that the debtor's payment to the plaintiff of $10,600.00 after she signed the note, in addition to the $14,005.20 she had already paid, is strongly indicative that her intent was to pay the plaintiff. The debtor also testified that she had tried to obtain additional funds through refinancing her home, but was unable to do so. In 2003, the debtor was able to make substantial monthly payments to the plaintiff by working at two jobs. The debtor's testimony, supported by medical records (Exhibits A,B), establish that her medical condition has deteriorated to the point where she is currently unable to work at her primary place of employment; she has been able to continue her second job on a very limited basis from her home by telephone. The debtor did not file a bankruptcy petition until May 2005, more than two years after signing the note. Such circumstances provide a strong inference that the debtor, at the time she signed the note, intended to pay her debt to the plaintiff. See, e.g. In re Radcliffe, 317 B.R. at 588 (circumstances indicating intent to repay); Universal Bank, N.A. v. Owen, 234 B.R. 857, 860-61 (Bankr. D.Conn. 1999) (same).

The court concludes that the plaintiff has failed to meet her burden of proof as to the essential elements for an exception to discharge under Bankruptcy Code §523(a)(2)(A), and, consequently, the plaintiff's claim is discharged.

### B.

### Debtor's Attorney's Fees - §523(d)

**Bankruptcy Code §523(d) states:**

> If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

When a creditor has brought an action pursuant to §523(a)(2), the debtor must establish that the debt at issue is a consumer debt and that it is dischargeable. Thereafter, the burden of proof shifts to the plaintiff to show that the nondischargeability proceeding was "substantially justified." AT&T Universal Card Svcs Corp. v. Williams (In re Williams), 224 B.R. 523, 529 (B.A.P. 2d Cir. 1998).

Bankruptcy Code §101(8) defines "consumer debt" as "debt incurred by an individual primarily for a personal, family or household purpose." Legal fees owed the plaintiff for representing the debtor in her divorce proceedings, having been incurred for personal and/or family purposes, are thus within the Bankruptcy Code's definition of consumer debt. The court, having determined in Section IV.A., supra, that the plaintiff's claim is dischargeable, the burden of proof is on the plaintiff to show her pursuit of this adversary proceeding was substantially justified. The plaintiff "must be substantially justified at all times through trial to be insulated from paying attorney's fees under §523(d). . . . A creditor must bring its claim against a debtor in good faith and, likewise, abandon its claim once it learns that the case is not substantially justified. If the creditor continues with its case past the point of

8

substantial justification, it must be made to pay the Debtor's attorney's fees in defending against the action." Id. at 530.

For the plaintiff's action "to be substantially justified, it must be reasonable in both law and fact." Id. at 531 (citations omitted). The applicable law requires the plaintiff to prove, by a preponderance of the evidence each of the elements of a §523(a)(2)(A) action. See Section IV.A., supra. The plaintiff has fallen short of meeting her burden. She has proffered no evidence of any reliance on or any loss resulting from the debtor's signing of the note.

Although the complaint alleges that the debtor signed the note "in order to induce the plaintiff to continue to represent the [debtor] in the pending dissolution action" (Complaint ¶6), the plaintiff conceded at trial that she would not have been permitted by the state court to withdraw from representing the debtor at the trial set for the next day. (Tr. at 37-42.) The plaintiff's representation of the debtor in the dissolution trial, therefore, could not have been done in reliance on the note, and the plaintiff has not proven, nor even alleged, that she undertook any other action in reliance on the note.

The complaint alleges that "Plaintiff relied on the fraudulent conduct set forth above and as a result Plaintiff suffered damages and loss by not getting the funds agreed to." However, the plaintiff offered no evidence that the terms of the note in any way affected her determination of the amount owed her by the debtor. The plaintiff represented the debtor at her dissolution trial, as she testified she would have done even in the absence of the note, and her services were terminated thereafter.

The plaintiff asks the court to infer, from the debtor's subsequent reluctance to

9

execute the QDRO or liquidate her pension account, that, at the time the debtor signed the note, she did so with the intent to defraud the plaintiff, despite the debtor's continuing to make substantial payments for more than a year thereafter.

While the plaintiff's evidence may support a claim for breach of contract, such claims, without more, are dischargeable in bankruptcy. The plaintiff testified that the allegedly fraudulent action she was complaining about "was not complying with the note." (Tr. at 48.) Upon further questioning, the plaintiff stated, "the bottom line is she didn't pay me." (Tr. at 50.)

The court concludes that the present proceeding lacked substantial justification from the outset, and that the debtor is entitled to payment of the costs and expenses, including reasonable attorney's fees, expended on her defense. Further, there are no special circumstances that would make the award unjust. The debtor's attorney submitted to the court his timesheets and hourly fees, indicating a 2.7 hour trial at $250 per hour, and 24.6 hours of other legal work at $200 per hour, for a total of $5,595. The court finds such fee to be reasonable, and judgment for that amount will enter for the debtor.

V.

## CONCLUSION

In accordance with the foregoing discussion, the court concludes that the plaintiff's claim is discharged. Judgment will enter for the debtor on the counterclaim for attorney's fees and costs in the amount of $5,595.

Dated at Hartford, Connecticut this 27 day of June, 2006.

_____
ROBERT L. KRECHEVSKY
UNITED STATES BANKRUPTCY JUDGE